**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────

**No. 25-1423**

───────────

YERLI LIZETH MARTINEZ CRUZ,

        Petitioner,

   v.

TODD BLANCHE, Acting Attorney General,

        Respondent.

───────────

On Petition for Review of an Order of the Board of Immigration Appeals.

───────────

Submitted: March 13, 2026                  Decided: June 2, 2026

───────────

Before DIAZ, Chief Judge, and RICHARDSON, Circuit Judge, and KEENAN, Senior Circuit Judge.

───────────

Petition denied by unpublished opinion. Chief Judge Diaz wrote the opinion, in which Judge Richardson and Judge Keenan joined.

───────────

**ON BRIEF:** Benjamin J. Osorio, Alexandra Ribe, MURRAY OSORIO PLLC, Fairfax, Virginia, for Petitioner. Brett A. Shumate, Assistant Attorney General, Sheri R. Glaser, Peter Gannon, Office of Immigration Litigation, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

───────────

Unpublished opinions are not binding precedent in this circuit.

DIAZ, Chief Judge:

Yerli Lizeth Martinez Cruz, a citizen of Honduras, sought asylum after a gang member stalked and harassed her. Because her claim was based on private persecution, she had to show that the Honduran government was unable or unwilling to control her assailant. An immigration judge found, and the Board of Immigration Appeals agreed, that Martinez Cruz couldn't meet that burden. So the judge rejected her asylum application, and the Board dismissed her appeal.

Because substantial evidence supported the immigration judge's dispositive factual finding, we must deny Martinez Cruz's petition for review.

I.

A.

Martinez Cruz is from a small village in Honduras. In March 2014, when she was fourteen years old, a much-older gang member nicknamed "El Macabro" accosted her as she walked to school.

El Macabro initially told Martinez Cruz she was pretty and said he wanted her to be his girlfriend. But his tone quickly turned aggressive and he demanded she "be his woman." Joint Appendix (J.A.) 136. El Macabro also threatened to kill Martinez Cruz if he saw her with another man, and said he'd kill her if she didn't leave with him.

El Macabro's threats continued and escalated to an attempted sexual assault. Bystanders intervened and took Martinez Cruz home. Two days after the attack, Martinez Cruz and her grandmother traveled two hours by bus to report the assault to police. The

2

officers told Martinez Cruz that they would investigate.  But Martinez Cruz never heard from them again, nor did she ever learn of them visiting her village.

El Macabro continued to harass Martinez Cruz.  He threatened to rob and kill her. A distant relative intervened, and a cousin walked her to school for the next two weeks. But because El Macabro continued to stalk her, Martinez Cruz eventually stopped going to school.

Martinez Cruz fled Honduras about three months after her first interaction with El Macabro.  After she arrived in the United States, her grandmother, who remained in Honduras, told Martinez Cruz that El Macabro threatened to kill Martinez Cruz for filing a police report and fleeing the country.

### B.

At the Texas border, Customs and Border Patrol apprehended Martinez Cruz and the Department of Homeland Security charged her as removable.  Because she was an unaccompanied minor, the Department quickly closed her removal proceeding to allow United States Citizenship and Immigration Services to consider her asylum application.

Martinez Cruz sought asylum, withholding of removal, and protection under the Convention Against Torture.  The immigration judge denied her application.  Although the judge found Martinez Cruz credible, he also found that she'd failed to show that her persecution was "on account of" a protected category or that the Honduran government was unwilling or unable to protect her from future threats.  J.A. 43–46, 49.

The Board of Immigration Appeals found no clear error and accordingly dismissed Martinez Cruz's appeal.

3

This petition followed.[1]

## II.

To qualify for asylum, an applicant must show that she faces persecution in her home country because of her "race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. §§ 1101(a)(42)(A), 1158(b)(1)(B)(i). If she faces persecution from a private actor, she must show that her "government is unable or unwilling to control" that actor. *Molina-Diaz v. Bondi*, 128 F.4th 568, 571 (4th Cir. 2025).

We start—and end—with Honduras's willingness and ability to protect Martinez Cruz from her assailant. Because that's a question of fact, we review for substantial evidence. *See Ngarurih v. Ashcroft*, 371 F.3d 182, 188 (4th Cir. 2004). We must treat the immigration judge's factual finding "as conclusive unless the evidence was such that any reasonable adjudicator would have been compelled to a contrary view." *Tassi v. Holder*, 660 F.3d 710, 719 (4th Cir. 2011).

## A.

The immigration judge found, and the Board affirmed, that Martinez Cruz "did not establish that the government was or would be unable or unwilling to protect her." J.A. 4 (citing J.A. 49). Martinez Cruz argues that this finding was clear error because the Honduran government couldn't protect her, even if it was willing to do so.

---

[1] Martinez Cruz didn't appeal the denial of her request for protection under the Convention Against Torture.

4

The immigration judge credited and meaningfully engaged with Martinez Cruz's testimony. He found that police took a report about El Macabro and said they would look for him. Although the judge acknowledged that "the police may not have done as much as [Martinez Cruz] hoped," he posited that some investigation likely happened because El Macabro became aware of it. J.A. 49. And Martinez Cruz never testified that she believed the police betrayed her; she merely speculated El Macabro must have learned of the investigation from the police.

The judge also considered country conditions evidence. He noted that Honduras prosecutes rape and sexual harassment regularly and offers easy-to-access resources for women to report sexual harassment or abuse. Because the Honduran government takes rape and sexual harassment seriously and provides services to women like Martinez Cruz, the judge found she failed "to establish that the government of Honduras would be unable or unwilling to protect her from El Macabro." J.A. 50.

Martinez Cruz's assertion that the police response was merely token can't overcome those findings. *Orellana v. Barr*, 925 F.3d 145, 153 (4th Cir. 2019). Her case isn't comparable to *Orellana*. We granted the petition there based on a record showing years of police inaction and token responses after the petitioner's repeated efforts to get help. Here, by contrast, Martinez Cruz made only one report and fled the country within weeks. It's true, of course, that we have no record of police action. But we also have no record of inaction. While the timing is not dispositive, the record is.

We don't suggest that Martinez Cruz was wrong to flee when she did. Nor do we diminish the severity of the harassment she endured, or discredit her view of the facts. But

5

on this record (or lack thereof), we cannot say that *any* reasonable factfinder would have been compelled to take her view of the facts.  So our highly deferential standard of review requires us to deny her petition.[2]  And we dispense with oral argument because the facts and legal contentions are adequately presented in the materials before us and argument would not aid our decision-making process.

*PETITION DENIED*

---

[2] We needn't reach Martinez Cruz's nexus arguments because she'd need to prevail on both issues for us to grant her petition.  And the standard for withholding of removal is more demanding than that for asylum, so her withholding claim necessarily fails because her asylum claim does. *Camara v. Ashcroft*, 378 F.3d 361, 367 (4th Cir. 2004).